PORT HURON ENGINE & THRESHER COMPANY, Appellant, vs. CLEMENTS and others, Respondents.

*January 28—February 18, 1902.*

*Promissory notes: Judgment on cognovit: Setting aside: Warrant of attorney: Pleading: Abuse of discretion: Sale of chattels: Warranty: Notice: Costs.*

1. Where a warrant of attorney accompanying a promissory note expressly authorizes confession of judgment for the amount "unpaid thereon, whether due or to become due," the fact that the note was not due at the time judgment thereon was entered, is not sufficient ground for setting aside the judgment.

2. Where, on a motion to set aside a judgment, the only defense on the merits alleged was, "that no consideration whatever was received" for the note sued on, it is an abuse of discretion to set aside the judgment; the rules of pleading requiring that in alleging want of consideration, the pleading should set out the facts showing that no consideration existed for the execution of the contract.

3. In such case, where notes were given for machinery, sold under a written agreement (requiring the purchaser, in case of its failure to fulfill certain warranties, to give the seller notice—stating the particulars in which failure is claimed; time to get to the machinery with skilled workmen and put it in order; an opportunity to have a competitive trial, and time to get a representative to such trial), a proposed answer alleging nothing more than that notice was given by defendants "of the condition of the engine, and demanded from the plaintiff a return of the notes," does not state a defense on the merits.

4. Where an order for machinery is given subject to the approval and acceptance by the seller, and it was never approved, but rejected because the seller had no such machine, a claim for damages for failure to furnish it is without foundation.

5. Where, on a motion to set aside a judgment entered on *cognovit*, the proposed answer alleged that the machinery for which the note was given failed to do good work, and set out a new agreement in reference to the machinery, and failure to conform to such new agreement, a partial defense is alleged, and it is not an abuse of discretion to set aside the judgment.

6. On a motion to set aside a judgment entered on *cognovit*, it is error to impose costs on the plaintiff; on the contrary, under sec. 2832, Stats. 1898, authorizing the court, in its discretion, to set aside a judgment "upon such terms as may be just," costs should be imposed on defendant as a condition of granting the motion.

Appeal from an order of the circuit court for Monroe county: J. J. Fruit, Circuit Judge. *Reversed.*

This is an appeal from an order made March 30, 1901, setting aside two judgments entered upon notes and warrants of attorney February 4, 1901,—one for $517.90, damages and costs upon a note and warrant of attorney signed by the defendants *Peter* and *John Clements, Jr.*, July 26, 1900, and payable on or before December 1, 1902, for $450 and inter-

est; and the other for $1,053.50, damages and costs, upon two notes and warrants of attorney, signed by the defendants *John P. Clements, Peter Clements,* and *John Clements, Jr.,* July 26, 1900,—one for $450 and interest, payable on or before December 1, 1900, and the other for $450 and interest, payable on or before December 1, 1901,—and which order allowed the defendants to serve and file their proposed answers, and expressly required the two judgments so entered to stand as security to the plaintiff herein pending the trial of the action, and required the plaintiff to pay forthwith $10 costs of the motion. The order so entered was granted upon the application of the defendants, based upon the judgment rolls, respectively, and affidavits and proposed verified answers in each case, and affidavits and written contracts read in opposition to the motion. The proposed answer of *Peter* and *John Clements, Jr.,* to the note upon which the smaller judgment was entered is simply to the effect that the plaintiff was a corporation existing under the laws of Michigan, as alleged; that they made the note as alleged, but received no consideration therefor; and that by the terms of the note it was not due and payable until December 1, 1902. The proposed answer by the three defendants to the two notes upon which the larger judgment was entered is similar to the other, and also, among other things, alleged, in effect, an agreement on their part to purchase of the plaintiff "one of its ten-horse power Port Huron traction engines, and one 33x50 Rusher separator with attached stacker, drive belt, bagger, tank, pump, and canvas," for $1,350 in all, upon warranties alleged to have been there made by the plaintiff; and it was alleged therein that at the time of making such warranties it was expressly agreed that, if any of the parts failed to work as warranted when properly operated, or to furnish the power, or work well, or give satisfaction, or thresh clean, then the three notes were to become null and void, and be returned

to the defendants; and such answer further alleged as follows:

"That thereafter, on or about the 1st day of August, 1900, said defendants gave said engine a fair trial, but that the same did not do good work, did not furnish the horse power warranted, and would not work at all, and proved entirely worthless.

"That the said defendants at once gave notice to the said plaintiff at its home at Port Huron, Michigan, by a registered letter, of the condition of said engine, and also notified the local agent of said plaintiff at Cashton, Wisconsin, of the condition of the engine, and demanded from the said plaintiff a return of their notes.

"That said plaintiff, by its agents, again agreed with the said defendants that they would put said engine in perfect order if the said defendants would agree to give engine another trial. The said plaintiff further agreed with the said defendants that, if the said engine was given another trial, and it did not do good work, and give good satisfaction, that the said defendants need not keep said engine, but that the said plaintiff would take same back. The said defendants, in order to give said engine a fair trial, procured an expert engineer to operate it. That said engine was not as guaranteed, did not do good work, but, on the contrary, would not work at all. That said engine could not be made to run and furnish any power whatever, even when operated by said expert engineer."

It also alleged, in effect, that, seeing that the engine would not furnish power as warranted, and could not be made to run, and was defective and worthless, the plaintiff's agents agreed to take it back, and to furnish the defendants at their residence, on or about August 9, 1900, with a fourteen-horse power, simple, Port Huron engine and the new Rusher wind stacker, in consideration of which the defendants agreed to give back the engine first contracted for and two new notes of $275 each, in addition to the three mentioned, payable as stated; but the plaintiff wholly failed to do so, and August 25, 1900, notified the defendants that it was unable to per-

form the contract as agreed. That the defendants then and there notified the plaintiff that they considered the contract as rescinded and countermanded, and the defendants, on August 30, 1900, purchased a new Advance engine. That the only consideration the defendants had received for the three notes was the separator and attachments, for which the agreed price was $550. That the defendants tendered $455, the amount of the note due December 1, 1900, to apply as part payment of the separator and attachments. That neither of the other two notes were due when the judgment was entered; and also alleged performance of all the conditions and terms of the contract as modified on their part, and counterclaimed $500 damages for breach of the original contract and for failure to furnish the fourteen-horse power engine, as agreed.

In opposition to the motion to set aside such judgments, the plaintiff presented an affidavit of its agent who sold the machinery to the defendants and took their order therefor, with the written contract between the parties, dated June 20, 1900, as containing the only warranties and agreements ever made by the plaintiff, and stating that the machinery complied in every respect with such warranties, and fulfilled every representation made, and was tried by the defendants to their full satisfaction, and was accepted by them; that August 10, 1900, the defendants expressed a desire to exchange the engine for a fourteen-horse power, simple, Port Huron engine, for which it was agreed that, if the order therefor should be accepted by the plaintiff, the defendants would pay $550; that such order was in writing, and attached thereto, and was taken by the plaintiff's agent subject to the approval of the plaintiff; that the plaintiff rejected the order, because it did not have an engine of that size and dimensions and proportions on hand; but offered at the same price a fifteen-horse power compound engine, which was more valuable, and which the defendants at first accepted, but shortly thereafter countermanded; and the affidavit expressly and specific-

ally denies each and every allegation contained in said answer relative to the transactions and agreements with him made, except as therein admitted. The written order for the fourteen-horse power engine, signed by the defendants, contained this provision:

"The order is subject to the approval and acceptance of said company at its home office in the city of Port Huron, Michigan. Same is to have one month for investigation and acceptance. When approved and accepted by same, this order is a binding contract. It cannot be varied in any respect, except in writing over the signature of an officer of the company."

*Daniel H. Grady,* for the appellant.

For the respondents there was a brief by *Richards & Bowler,* and oral argument by *J. J. Bowler.*

CASSODAY, C. J. 1. The fact that two of the notes were not payable at the time the judgments were entered furnished no grounds for setting aside the judgments. The warrant of attorney given with each note expressly authorized the confession of judgment for the amount "unpaid thereon, whether due or to become due"; and such agreements were in harmony with the statutes. Secs. 2895, 2896, Stats. 1898; *Reid v. Southworth,* 71 Wis. 288.

2. The only defense upon the merits alleged in the proposed answer to the note upon which the smaller judgment was entered is "that no consideration whatever was received therefor." That is the only allegation or statement contained in that answer in respect to such consideration. It is said by a standard text writer that:

"As to the manner of stating want of consideration when necessary to plead it, the authorities are not harmonious. In some jurisdictions it will be sufficient to allege generally that the contract sued on was without consideration, while in others it is necessary to state the facts showing want of consideration. In pleading want of consideration the answer

should allege that no consideration existed for the execution of the contract, and not that no consideration was received by the party pleading.    .   .   .    In pleading failure of consideration it will not be sufficient to allege it in general terms. The facts showing wherein the failure of consideration consists must be alleged." 4 Ency. of Pl. & Pr. 947, 948, 950.

Authorities are there cited in support of such statements. Here the equity powers of the court were invoked to set aside a judgment regularly entered. To set aside such a judgment, the verified answer should show a meritorious defense. *Howey v. Clifford,* 42 Wis. 561; *Union L. Co. v. Chippewa Co.* 47 Wis. 245; *Milwaukee M. L. & B. Soc. v. Jagodzinski,* 84 Wis. 35. In opposition to the motion the plaintiff presented the written contract containing the agreements made by the respective parties, and described the machinery for which the notes were given; and that the plaintiff had fully performed all the agreements and conditions on its part to be performed. Confessedly, a large portion of that machinery was accepted without any objection on the part of the defendants. As to the smaller judgment, we must hold that it was an abuse of discretion to set it aside.

3. What has been said applies, to some extent, to the larger judgment. The only warranties contained in the contract are to the effect that, if the engine is properly operated by competent persons, then it was warranted to furnish as much power and use as little fuel and water as any other make of thresher engine in the world, sizes, conditions, and manufacturers' ratings of engines being equal or equalized. If the separator is properly operated by competent persons, then it was warranted to waste as little, thresh as fast and clean, as well as any other make of grain-threshing machine in the world, sizes and conditions being equal. Attachments were warranted to do as good work as any other make, sizes and conditions being equal. All machinery was warranted to be

first class in materials, workmanship and finish.      Accompanying such warranties were these:

"Conditions:—If at the end of the first day's use the purchaser is unable to make said machinery operate well, then notice is to be given by registered letter to *Port Huron Engine & Thresher Company,* at Port Huron, Mich., stating particularly what parts and wherein it fails to fill the warranty, and time given to get to the machinery with skilled workmen, and put in order.      The purchaser and his employees are to render all necessary and friendly assistance, co-operating in making the machinery a practical success.      If the purchaser then within three days notifies *Port Huron Engine & Thresher Co.,* Port Huron, Michigan, by registered letter, that a competitive trial is required, and gives the company time in which to get representatives at the trial, and then procures an engine, or a separator, or a sheller which beats this one in a fair competitive trial, the said machine will be taken back, and payments will be refunded."

There is no allegation in the answer of the three defendants that any notice containing such required statement was given.      The most that is alleged in that regard is that the defendants gave notice "of the condition of the engine, and demanded from the plaintiff a return of their notes."      Nor does it allege that time was "given to get to the machinery with skilled workmen, and put in order."      Nor does it allege that the defendants "within three days" notified the plaintiff that a "competitive trial" was required, much less that it gave the plaintiff "time in which to get representatives at the trial," as mentioned in the contract.      We must hold that, so far as the answer undertakes to set up a meritorious defense based upon breaches of the written contract, it was a failure.

4. As indicated in the statement of facts, the order of the defendants for the fourteen-horse power engine was subject to the approval and acceptance of the plaintiff at its home office; and, as it was never approved, but was promptly rejected, because it had no such engine, the claim for damage for failure to send the same is without foundation.

5. But we are constrained to hold that the portion of the answer of the three defendants quoted in the foregoing statement of facts does state a partial defense upon the merits. It is there alleged, in effect, that on or about August 1, 1900, the engine did not do good work upon a fair trial; that it did not furnish the horse power warranted, and did not work at all, but proved entirely worthless; that the defendants at once gave to the plaintiff and its local agent a notice of the condition of the engine, and demanded a return of the notes; that the plaintiff, by its agents, again agreed with the defendants to put the engine in perfect order if the defendants would agree to give the engine another trial; and that it was then agreed between them that, if the engine was given another trial, and it did not do good work and give good satisfaction, the defendants need not keep the engine, but that the plaintiff would take the same back; that, in order to give the engine a fair trial, the defendants procured an expert engineer to operate the same; that the engine was not as guaranteed, and did not do good work, but, on the contrary, would not work at all; and that the engine could not be made to run and furnish any power whatever, even when operated by such expert engineer. Whether such agreement, if made, was oral or in writing, does not appear; but it is alleged to have been made after the making of the contract, and after the alleged failure of the engine to perform, as stated. Of course, it was competent for the plaintiff or its authorized agent to so modify the original contract. Whether it can be proved or not may be demonstrated upon a trial in court. We are constrained to hold that such new agreement, if made, constituted a partial defense to the two notes upon which the larger judgment was entered, and hence that the trial court did not abuse its discretion in setting aside that judgment.

6. That judgment was set aside on motion of the defendants, and as a matter of favor to them. It was certainly error

to impose costs on the plaintiff in granting such motion. On the contrary, costs should have been imposed upon the defendants as a condition of granting the motion. While such relief is to be granted "in the discretion of the court," yet it is to be "upon such terms as may be just." Sec. 2832, Stats. 1898; *Behl v. Schuette,* 95 Wis. 441; *Boutin v. Catlin,* 101 Wis. 545, 550; *Mills v. Conley,* 110 Wis. 525.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded, with direction to enter an order denying the motion to set aside the smaller judgment, and to grant the motion to set aside the larger judgment on payment of $10 costs by the defendants to the plaintiff, except that such judgment be allowed to stand as security to the plaintiff herein; and the three defendants are to be allowed to serve and file their proposed answer.